UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIOLA NICOLAI,

   Plaintiff/Counter-Defendant,

                Case No. 08-CV-14626

vs.

                HON. GEORGE CARAM STEEH

AETNA LIFE INSURANCE COMPANY,

   Defendant/Counter-Plaintiff.

_____/

ORDER GRANTING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
(DOCUMENT #24) AND DENYING DEFENDANT'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (DOCUMENT # 27)

  This case involves a claim by plaintiff, Viola Nicolai, that defendant Aetna Life Insurance Company wrongfully terminated her long-term disability benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Nicolai claims that Aetna's decision to discontinue benefits was arbitrary and capricious, and the result of a conflict of interest. Aetna filed a counterclaim to recover an alleged overpayment of benefits. The parties filed cross motions for judgment on the administrative record, which are presently before the court.

  The court heard oral argument in this matter on June 2, 2010. For the reasons set forth below, the court finds that Nicolai's claim of wrongful termination of long-term disability benefits is GRANTED and Aetna's claimed overpayment of benefits is DENIED.

## FACTUAL BACKGROUND

Ms. Nicolai suffered from back problems that began in 1997 and were severely aggravated in a 1999 rollover car crash. Nicolai was employed as a bank manager, and her duties included running a branch, handling loans, investment sales and new accounts, and training and supervising staff. She stopped working in November 2000, due to her back pain. Nicolai was first treated by Randy L. Gehring, M.D. on March 9, 2001, when she was diagnosed with degenerative disc disease. She underwent a laminectomy/fusion surgical procedure in June 2001.

On May 22, 2001, Aetna confirmed that Nicolai had been approved for long-term disability benefits. Nicolai's disability status was certified as of November 20, 2000, and after her 90-day elimination period and bank sick time expired, she was approved for benefits effective May 8, 2001. This determination was based on Aetna's initial "own occupation" test of disability applicable during the first two years of eligibility: "You are not able, solely because of disease or injury, to perform the material duties of your own occupation . . ." After two years, Nicolai was required to meet a more stringent "any occupation" definition: "You are not able, solely because of disease or injury, to work at any reasonable occupation." A "reasonable" occupation is defined as "any gainful activity for which you are, or may reasonably become, fitted by education, training or experience."

The Policy terms provide that a period of disability will be certified by Aetna if a claimant is under the care of a physician, and "if, and for only as long as, Aetna determines that you are disabled as a direct result of a significant change in your physical or mental condition." A certified period of disability will end, and benefits will be

terminated, on the date that a claimant fails to provide "proof that you are unable to perform the duties of any occupation for compensation or profit equal to more than 80% of your adjusted predisability earnings."

In February 2002, Dr. Gehring, Ms. Nicolai's treating physician, filled out Aetna's Attending Physician Statement ("APS"). Gehring listed Nicolai's physical impairment as "severe limitation of functional capacity; incapable of minimal (sedentary) activity." In an attached letter to Aetna, Dr. Gehring indicated that he was unable to make specific recommendations concerning Nicolai's functional abilities. Dr. Gehring explained that it was "not possible to see a person in the office for 15 to 45 minutes and be able to give specific recommendations concerning the frequency and amount of lifting they can do in an 8, 10 or 12 hour day, whether this can be done seven days a week or five days a week, or whether they are continuously able to sit for 6.3 or 8 hours." Dr. Gehring stated that for this type of information, Aetna would need to obtain a five hour functional capacity evaluation.

Registered Nurse Patti Richards reviewed Nicolai's records on March 27, 2002, noting that her claimed restrictions and limitations were supported by the clinical findings for 3-6 months, but if Nicolai is still unable to return to work after that period, then an FCE should be considered. Nurse Richards reviewed the file again on September 23, 2002 and recommended scheduling an FCE to determine restrictions and limitations. Nurse Richards noted a previous lack of success in obtaining detailed restrictions and limitations from Dr. Gehring, and "not likely that more detailed info will be submitted in the future."

Aetna arranged for a functional capacity evaluation ("FCE") of Nicolai, that took place on October 23, 2002. The report was received by Aetna on November 5, 2002 and sent for medical review on November 7, 2002. Aetna Registered Nurse Judy Tierney reviewed the FCE results and observed that Nicolai "demonstrated ability to perform the duties of a light physical demand for an 8 hour day." The actual FCE is not part of the Administrative Record, but the court notes Aetna continued to pay benefits for an additional two years under the "any occupation" standard.

Ms. Nicolai submitted an updated Work History and Education Questionnaire, dated April 25, 2003. She indicated that her job required sitting for 6 hours, and standing and walking for 1 hour. During a phone call with Aetna on May 23, 2003, Nicolai reported she had difficulty sitting, standing, walking, sleeping, or doing housework, and that her pain increased with her activity level.

Dr. Gehring's February 6, 2004 APS indicates that Nicolai had no ability to work due to pain, and that she had to lie down frequently, approximately 50% of the day. Dr. Gehring's May 20, 2005 office notes following an examination of Nicolai state: "no acute distress . . . moderate tenderness over the region of the occipital nerves. Range of motion of the neck was full. Deep tendon reflexes were symmetric and strength was 5/5. Gait is mildly antalgic, but stable." He prescribed Vicodin and Darvocet, as alternatives.

Ms. Nicolai was not involved in any pain management program, yet her treating physician indicated her condition had regressed based upon her self-reported pain. As a result, on August 2, 2005, Aetna sent Nicolai for another FCE to evaluate her "ability to perform specific categories of work, i.e. sedentary, light, medium, heavy." The

4

purpose of the evaluation was identified as: "Own job; Compare abilities to occupational demands." The physical therapist performing the FCE classified Nicolai's previous bank manager job as involving "Light" level of work, and the therapist concluded that Nicolai was "incapable" of sustaining this level of work or performing many of the tasks involved in this type of work:

> Tolerance for the 8-Hour Day: Based on this evaluation, the client is incapable of sustaining the Light level of work for an 8-hour day due to her inability to complete the evaluation without added rest periods. She also shows inability for the following job task: weight handling of greater than 20 pounds such as briefcase or safe deposit box; carrying greater than 10 pounds with one hand such as briefcase; pushing and pulling such as file cabinets on wheels; occasional work bent over sitting or squatting; frequent walking; frequent trunk rotation in sitting and standing. She also does not show adequate balance for walking on uneven surfaces or ladder.

The physical therapist confirmed that Nicolai made a full effort during the testing. The therapist also specifically found that Nicolai was functionally limited in terms of decreased range of motion and muscle flexibility in her back, in addition to sheer back pain. However, the physical therapist, noted: "Based on this evaluation, Ms. Nicolai would be capable of sustaining a Sedentary level of work for an 8 hour day." Aetna communicated this "Sedentary" capacity conclusion to Concentra and received a "Transferable Skills Analysis" ("TSA") stating that Nicolai could perform the work of a "financial manager". According to the TSA report, plaintiff's position as a financial manager is categorized by the Dictionary of Occupational Titles as "sedentary." Based on the August 2, 2005 FCE results and Nicolai's self-reported work history, the TSA report indicated that Nicolai had a sedentary work capacity, and was able to lift, carry,

5

push or pull 10 pounds occasionally, while mostly sitting, in addition to possibly standing or walking for brief periods of time.

Aetna contacted Dr. Gehring for comment on these findings, and receiving no response, discontinued Nicolai's benefits in a letter issued on November 10, 2005. The denial letter indicates that the job of bank manager should be labeled "Sedentary," and therefore Nicolai should be able to perform the work of a bank manager without regard to the contrary conclusion of the FCE testing.

Ms. Nicolai appealed Aetna's decision, submitting additional supporting documentation, including Dr. Gehring's office note following a regular appointment on March 24, 2006. Dr. Gehring disputed that Nicolai had the capacity to work an 8 hour day because of "back pain which requires her to take frequent breaks and lie down during the day." He found her back range of motion was moderately to severely limited and her gait was mildly antalgic. He reviewed the results of the August 2005 FCE and opined that Nicolai could not return to her previous employment:

> I have documented repeatedly over the last few years that the patient has very limited exercise tolerance. Unfortunately, I do not know a way of getting her past that point and I see no way that she is capable of returning back to her job. Note should also be made that not only was she in pain secondary to the four hour functional capacity evaluation, but that she had significant increase of her pain for the next few days. Putting all these facts together, I do not see any way that she is capable of returning back to her job as a bank manager.

Ms. Nicolai also submitted the Social Security Disability decision of ALJ Paul Armstrong, which found that her pain complaints were not entirely credible, yet concluded that she was totally disabled based on her "age, education, lack of transferrable skills, and exertional capacity for sedentary work." Judge Armstrong found

6

that Nicolai has "severe" impairments consisting of degenerative disc disease and status post fusion with wound site infection, also noting that Nicolai's limitations "do not allow her to perform the full range of sedentary work." However, the ALJ found there were a significant number of jobs in Michigan which Nicolai could perform prior to her turning 50 years of age. Therefore, the ALJ concluded that Nicolai was not disabled from her alleged onset date of November 17, 2000 through September 27, 2003, but became disabled on September 28, 2003 (her fiftieth birthday) and that her disability continued through at least the date of his decision.

Finally, Nicolai submitted a vocational assessment by Dr. Samuel Goldstein, in which he opined that Aetna was mistaken in concluding that Nicolai could perform sedentary work. "The need to take unscheduled breaks, to lie down during the day, the severity of this individual's pain, the difficulty with ambulation, in my professional opinion I do not believe this woman has been capable of any level of employment since her injury, surgeries and sequelae thereof."

On May 2, 2006, Aetna referred Nicolai's claim to Aetna's staff physician, Dr. Robert Anfield, for a record review. Dr. Anfield found that: "there is no medical information within the file that controverts the results of the 8.2.05 FCE." Dr. Anfield acknowledged several of the limitations identified by the FCE testing: "Ms. Nicolai should be restricted from work activities requiring bent-over sitting, squatting, crouching, balancing on a ladder or walking on uneven surfaces." Dr. Anfield did not address the restrictions that Nicolai "is incapable of sustaining the Light level of work for an 8-hour day," the need to take frequent breaks, or the limitations with regard to weight handling, pushing, pulling, frequent walking or frequent trunk rotation.

With regard to the evidence submitted by Nicolai, Dr. Anfield observed as follows: Dr. Gehring's findings were based on Nicolai's self-reported limitations and not on any objective testing or examinations of his own. The ALJ found plaintiff not to be credible with respect to her claimed functional limitations. The October 23, 2002 FCE report was "longitudinally consistent" with the August 2, 2005 FCE report.

Dr. Anfield concluded that the FCE reports "demonstrate that despite Ms. Nicolai's chronic LBP [lower back pain] she is capable of activities of up to a light physical demand level and capable of at least a sedentary physical demand classification in an 8 hour day."

Aetna denied Nicolai's appeal in a letter dated June 22, 2006, concluding "[a]s Ms. Nicolai was able to perform a sedentary occupation, she would be able to perform her own occupation of a Bank Manager in the general labor market."

## STANDARD OF REVIEW

This matter is before the court on the parties' cross motions for entry of judgment on the administrative record. When a benefit plan accords discretionary authority to the claims administrator to make determinations with respect to benefits eligibility, the administrator's determination is subject to the "arbitrary and capricious" standard of review. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 107 (1989). In the present Policy, Aetna has the express "discretionary authority to determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy." Therefore, Aetna's decision to terminate payment of benefits is subject to the arbitrary and capricious standard of review. Under this standard, the administrator's plan interpretation and benefits determination can be

8

overturned only upon a showing of internal inconsistency, bad faith, or some other ground calling such determination into question. Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 695 (6th Cir. 1989).

However, an insurer who both pays claims and determines benefit eligibility has a conflict of interest for ERISA purposes, and the conflict should be weighed as a factor in determining whether there has been an abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 2349-50 (2008). The Glenn decision emphasized the heightened standard of care imposed on insurers when they act as fiduciaries under ERISA:

> . . . ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S. at 113, 109 S.Ct. 948 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

Glenn, 128 S.Ct. at 2350.

A district court reviewing a decision regarding benefits under ERISA is to "conduct a . . . review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly." Wilkins v. Baptist Healthcare Systems, inc., 150 F.3d 609, 619 (6th Cir. 1998). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams v. International Paper Co., 227 F.2d 706, 712 (6th Cir. 2000).

ANALYSIS

I.  Review of Aetna's Decision

Nicolai contends that Aetna has abused its discretion and wrongfully terminated her benefits in this case where there has been no substantial improvement in her condition since the time Aetna was paying disability benefits under the "any occupation" provisions of its Policy.  In support, Nicolai relies on the Social Security determination that she has been totally disabled from sedentary work since September 28, 2003.  Also, the August 2, 2005 FCE does not provide a basis for finding that Nicolai could work an 8-hour day at any activity level without requiring added rest periods.  Finally, under the circumstances of this case, where Aetna is both paying the claim and determining eligibility, Nicolai attacks Aetna's decision to use an internal staff physician to conduct a file review, rather than conducting an independent medical examination.

Aetna contends that Nicolai's claim that she is unable to work at even a sedentary occupation is based largely on self-reported complaints of back pain, which require her to lie down and take frequent breaks during the day.  When claims of a disabling condition are based on complaints of subjective pain, a claim administrator looks for objective medical evidence to determine a claimant's physical limitations.  Because Dr. Gehring's opinions as to Nicolai's functional abilities were informed by her self-reports, Aetna turned to the FCE reports to determine her functional level.

   A.  Burden on Claimant

In order to continue to qualify for total disability benefits after receiving disability benefits for 24 months, the Policy requires Nicolai to prove that she is unable to perform the duties of any occupation.  That is, Nicolai has a continuing duty to prove

that she is still disabled. The language of the Policy at issue imposes a burden on the claimant to prove continued disability, not on the insurer to prove that a claimant is not disabled. Donatiello v. Hartford Life and Accident Ins. Co., 344 F.Supp.2d 575, 580 (E.D. Mich. 2004).

There is no requirement that the claim administrator must demonstrate a change or improvement in the claimant's condition before terminating benefits previously awarded. "All that ERISA requires is that substantial evidence support a plan fiduciary's benefits decision - whether it be to deny benefits initially or to terminate benefits previously granted - when, as here, the plan fiduciary is vested with the discretion to determine, *inter alia*, both initial and continued eligibility for benefits." Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 274 (5th Cir. 2005). Claim administrators routinely require updated information in order to update an evaluation throughout the pendency of a claim. Once a claimant is no longer able to prove disability under the policy terms, benefits are no longer payable.

 B. File Review

Aetna's decision to discontinue disability benefits based on Dr. Anfield's "file review", without performing an independent medical examination, is called into question in this case. The Sixth Circuit has held that an administrator's decision to conduct a file review rather than a physical exam is one factor to consider in the overall assessment of whether the administrator acted in an arbitrary and capricious manner. Calvert v. Firstar Finance, Inc., 409 F.3d 286, 295 (6th Cir. 2005). In Calvert, the file review was found to be inadequate where the report did not describe the data reviewed, made no mention of surgical reports, x-rays, or CT scans in the record, and indicated that an FCE

would have been valuable when one had already been done. The court found the reviewing doctor's conclusions to be unsupported by the medical record.

Having no test results to consider, and no objective functional assessment from Dr. Gehring, Aetna turned to the FCEs performed in 2002 and 2005. Dr. Anfield concluded that the FCE reports "demonstrate that despite Ms. Nicolai's chronic LBP [lower back pain] she is capable of activities of up to a light physical demand level and capable of at least a sedentary physical demand classification in an 8 hour day." Nicolai points out that Dr. Anfield did not review Dr. Gehrig's May 3, 2006 APS, which was based on his regular physical examinations of Nicolai. However, Gehring's APS was not received until after Nicolai's claim file was sent to Dr. Anfield for review on May 2, 2006.

In regard to the August 2, 2005 FCE, the physical therapist conducted tests to evaluate Nicolai's "strength, mobility, and overall functionality." Nicolai was specifically tested at the "Light" level. The difference between "Light" and "Sedentary" work is primarily a reduction in the amount of weight that is being lifted or carried, generally the difference between 20 pounds and 10 pounds. Nicolai was tested at an activity level that required frequent sitting, with only occasional standing, walking or other activity, and she could not sustain this level of activity for an 8-hour day "due to her inability to complete the evaluation without added rest periods." The therapist found that Nicolai made a full effort during the testing. Given the results of the 2005 FCE, Aetna's conclusion that Nicolai could work an 8-hour day at the sedentary level is mere speculation.

C. Conflict of Interest

"[W]hen a plan administrator's explanation is based on the work of a doctor in its employ, we must view the explanation with some skepticism." Helfman v. GE Group Life Assur. Co., 573 F.3d 383, 393 (6th Cir. 2009) (quotation omitted).

Dr. Anfield's analysis includes consideration of Nicolai's credibility. Anfield refers to the social security decision where ALJ Armstrong questions Nicolai's credibility with regard to her complaints of pain, but does not refer to the therapist who noted that Nicolai put forth full effort during the 2005 FCE. The decision to rely on a file review rather than an actual medical examination is likely to be inadequate where "the conclusions from that review include critical credibility determinations." Calvert, 409 F.3d at 297 n.6.

The court considers Aetna's financial conflict of interest, as well as the fact that Aetna utilized an employee to conduct a file review, in evaluating the weight of the evidence.

D. Conclusion

Throughout the history of this case, Ms. Nicolai's bank manager job was considered to be light activity level and plaintiff was consistently found to be disabled from light work. It was only after plaintiff's job was reclassified as sedentary, that Aetna concluded plaintiff was not disabled. However, the support for this conclusion is inconsistent.

The social security ALJ found that plaintiff was disabled from performing sedentary work, even after concluding that her complaints of pain were not totally credible. This finding was based on plaintiff's age, education, lack of transferrable skills,

13

and an exertional capacity for *sedentary* work. Plaintiff's treating physician, Dr. Gehring, consistently opined she could not work an 8-hour day without additional rest periods. The 2002 FCE presumably concluded that plaintiff could not perform her own occupation because Aetna approved continued disability benefits. The only suggestion that plaintiff could perform a sedentary job came from the physical therapist who performed the 2005 FCE. However, plaintiff was not clearly tested at the sedentary level, and the therapist does not support her conclusion with specific test results. The same therapist found that plaintiff put forth effort during the FCE and was not able to work an 8-hour day at the light level.

The file evidence reviewed by Dr. Anfield does not contain physical examination evidence to support a finding that plaintiff could perform any level of work. Additionally, there is conflicting evidence regarding plaintiff's credibility as to her pain, which renders a file review inadequate in this case.

Recognizing the discretion afforded Aetna, but also mindful of the conflict of interest Aetna operated under, the court finds that the determination to discontinue benefits was arbitrary and capricious in this case.

II. Reimbursement of Overpayment

Disability benefits payable under the Policy are offset by the receipt of "other income." Nicolai signed a "Reimbursement Agreement" dated May 31, 2001, in which she agreed to reimburse Aetna for any overpayments, and she agreed that her disability benefits could be used to satisfy recovery of any overpayment.

Ms. Nicolai completed an "Other Income Questionnaire" on February 14, 2002, indicating that she filed a claim for Workers' Compensation benefits. On March 25,

2003, Aetna's subrogation vendor, The Rawlings Company offered a settlement of Aetna's lien on Nicolai's Workers' Compensation recovery in the amount of $18,946.33. Nicolai paid this amount to Aetna on April 28, 2003. Aetna wrote to Nicolai on July 2, 2003, confirming that "the overpayment . . . has been recovered in full." Aetna now claims that the settlement satisfied Nicolai's reimbursement obligation with respect to past disability benefits paid from the beginning of the claim until March 31, 2003, which totaled $37,892.65, but did not settle any offset owing against her ongoing disability benefits.

Aetna's acceptance of $18,946.33 from the workers' compensation award was not tied to any specific benefits paid to Nicolai. Implicit in settlement is a waiver of future claims against the same workers' compensation award. Having concluded an accord and satisfaction of its overpayment claim, Aetna is not entitled to make a new claim against Nicolai's workers' compensation award. Aetna's claim is denied in its entirety.

## CONCLUSION

The decision of the claims administrator is REVERSED and the matter REMANDED for further consideration consistent with this court's opinion. Ms. Nicolai is entitled to reinstatement of her long-term disability benefits retroactive to November 10, 2005, together with interest, costs and attorney fees. Aetna's counterclaim for recovery of overpayment of benefits is denied.

Dated: June 3, 2010

                S/George Caram Steeh
                GEORGE CARAM STEEH
                UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 3, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk